IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LYNN HARRIS, INDIVIDUALLY, AND | § | |
| AS INDEPENDENT ADMINISTRATOR | § | |
| OF THE ESTATE OF ROGER WADE | § | |
| HARRIS, DECEASED, TED HARRIS, | § | |
| AND HEATHER SANDERS | § | |
| v. | § | A-06-CA-097 LY |
| | § | |
| J. B. HUNT TRANSPORT, INC. | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are: Moffett Engineering, Ltd.'s Motion to Dismiss (Clerk's Doc. No. 46); J.B. Hunt's Preliminary Response to Moffett Engineering, Ltd.'s Motion to Dismiss (Clerk's Doc. No. 47); Moffett Engineering, Ltd.'s Reply to Response to Motion to Dismiss (Clerk's Doc. No. 54); J.B. Hunt Transport, Inc.'s Reply to Moffett Engineering, Ltd.'s Reply (Clerk's Doc. No. 55); Sur-Rebuttal of Moffett Engineering, Ltd. (Clerk's Doc. No. 59-2); J.B. Hunt Transport, Inc.'s Response to Sur-Rebuttal (Clerk's Doc. No. 61); J.B. Hunt Transport, Inc.'s First Supplemental Response to Moffett Engineering Ltd.'s Motion to Dismiss (Clerk's Doc. No. 89); and J.B. Hunt Transport, Inc.'s Second Supplemental Response to Moffett Engineering Ltd.'s Motion to Dismiss (Clerk's Doc. No. 112).

On June 12, 2007, the District Court referred the above-Motion to Dismiss to the this Court for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for

the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. The Court enters the following Report and Recommendation.

## I. GENERAL BACKGROUND

The cases arises out of an accident that occurred on August 19, 2004, in which Roger Harris was fatally injured loading a 2000 Moffett M5000 "piggyback" forklift onto a J. B. Hunt tractor trailer. The forklift was manufactured by Moffett, an Irish corporation. At the time of the accident, Harris was employed by Action Lift, Inc., a Texas corporation. Harris' estate and survivors originally filed this cause of action against J.B. Hunt alleging various state tort causes of action. J.B. Hunt then filed a third party complaint against various entities including Moffett Engineering, Ltd. Moffett disputes that the District Court has personal jurisdiction over it as it is an Irish corporation which sells its truck-mounted forklifts exclusively to Third Party Defendant HIAB, Inc., of Perrysburg, Ohio, f/k/a Cargotech, Inc. Moffett moves to dismiss on this basis.

## II. ANALYSIS

**A.     Standard of Review**

The plaintiff bears the burden of demonstrating that the court enjoys personal jurisdiction over a nonresident defendant who has brought that jurisdiction into question. *Allred v. Moore & Peterson, P.C.*, 117 F.3d 278, 281 (5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998). In resolving a jurisdictional issue, the Court may review pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, and any part of the record. *Id*. When, as here, the district court does not conduct an evidentiary hearing, the party seeking to assert personal jurisdiction is required only to present sufficient facts to make out a *prima facie* case. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000). The Court will accept as true any uncontroverted allegations contained in the party's

complaint and will resolve all factual conflicts arising out of the parties' affidavits in favor of the party seeking jurisdiction. *Id.* However, the Court need not accept "merely conclcusory" allegations as true. *Central Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

**B.**     <u>**The Standard for Exercising Personal Jurisdiction**</u>

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if: (1) the state long-arm statute permits an exercise of jurisdiction, and (2) an exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003), *cert. denied*, 540 U.S. 1111 (2004); *see also* FED. R. CIV. P. 4(e)(1), 4(h)(1), 4(k)(1). Because the requirements of Texas's long-arm statute are coextensive with the requirements of the Due Process Clause, the sole inquiry is whether the district court's exercise of personal jurisdiction over the defendants would be consistent with due process. *Religious Tech Ctr.*, 339 F.3d at 373.

The exercise of jurisdiction over a nonresident defendant is proper, under the Due Process Clause, when two requirements have been met: (1) the defendant has established sufficient "minimum contacts" with the forum state, and (2) exercising jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214-15 (5th Cir. 2000). A defendant has minimum contacts with a forum if it has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The minimum contacts requirement ensures that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). As the Supreme

(centered at bottom)

Court has reasoned, the "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person." *Burger King, Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). "Jurisdiction, however, is proper where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* (emphasis in original).

The minimum contacts requirement may further be subdivided into contacts that give rise to *specific* personal jurisdiction and those that give rise to *general* personal jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994). A court may exercise *specific* personal jurisdiction over a defendant if the suit arises out of or is related to the defendant's purposeful contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984); *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir.2000). By contrast, if a suit is unrelated to the defendant's activities in the forum, a court may exercise *general* personal jurisdiction over the defendant if the defendant's contacts with the forum state are substantial and "continuous and systematic." *Helicopteros*, 466 U.S. at 414-15; *Alpine View Co.*, 205 F.3d at 215. If a nonresident defendant has sufficient related or unrelated minimum contacts with the forum, then the Court must consider whether the "fairness" prong of the jurisdictional inquiry is satisfied. *Wilson*, 20 F.3d at 647. The fairness of requiring a nonresident to defend a suit in a distant forum is a function of several factors, including the "interests of the forum State." *Id*.

C.   **Summary of the Jurisdictional Evidence**

The following evidence has been submitted to the Court in support of J.B. Hunt's claim that this Court has jurisdiction over Moffett. First, J.B. Hunt relies upon the Declaration of Keith Quigley,

the General Manager of Moffett Engineering, Ltd. ("MEL"), an Irish corporation. In his Declaration Mr. Quigley states:

> 4.  In the United States, MEL sells its TMFLs [truck mounted forklift] exclusively through Hiab, Inc., of Perrysburg, Ohio f/k/a Cargotec, Inc.
>
> 24. MEL has never had regular and systematic contacts with Texas in any way. The only contacts it has had took place on rare occasions when a MEL employee visited Texas for a very limited time. Specifically, on only two occasions over the last two years, Moffett Engineering's Director, Kevin Turnbull, was physically present in Texas. Each visit took place in 2005.
>
>     (a) On March 3, 2005, Mr. Turnbull visited Hiab, Inc.'s customer, Bison Lumber, in Houston to assist with an attachment problem.
>
>     (b) On May 19, 2005, Mr. Turnbull again visited Bison Lumber to meet with various representatives and visit job sites.
>
>     (c) On May 20, 2005, Mr. Turnbull visited Hiab, Inc.'s customer, Dynamex, in Lancaster to discuss various applications following delivery of a new truck.
>
>     (d) On May 20, 2005, Mr. Turnbull visited Hiab, Inc. employee, Harry Karr, in Fort worth to discuss ongoing projects.
>
> 25. Neither MEL nor Hiab, Inc. was the parent company of the other at any point during the time period relevant to this matter. MEL shipped the Accident Unit to Hiab, Inc. on February 25, 2000. Based on my review of the relevant Hiab, Inc. documents, Hiab, Inc. sold the Accident Unit to Transamerica Vendor Financial Corporation on April 5, 2000, which subsequently leased the unit to Home Depot.

J.B. Hunt argues that these visits, along with the knowledge that Hiab was selling its products in Texas are sufficient to establish jurisdiction.

J.B. Hunt also relies upon a Hiab website stating that "we sell truck-mounted forklifts worldwide, supplying machines to customers on five continents from our production plants in Ireland and The Netherlands." *See* Exhibit A to J.B. Hunt's Reply (Clerk's Doc. No. 55). The Hiab website also states "Moffett provides a 'Total Care Package' which covers everything you need to know about owning a new MOFFETT and the support you can expect from us should you ever require

assistance." *See* Exhibit A to J.B. Hunt's Reply (Clerk's Doc. No. 55).  On another page, the website points one to Waltco service locations, 33 of which are located in Texas.  This website also states Waltco is a "member of the Hiab division of the Cargotec corporation."  *See* Exhibit A to J.B. Hunt's Reply (Clerk's Doc. No. 55).

Articles also on the website dated April 23, 2004, state, "The combined businesses, known today as Moffett, is the world's largest manufacturer of truck-mounted forklifts – and from January 1st, 2004, the organization is to increase its product range and launch an exciting new package of customer benefits."  *See* Exhibit 2 to J.B. Hunt's First Supplemental Response.  Other articles discuss Moffett's worldwide presence.  *Id.*  The evidence demonstrates that 335 Moffett forklifts were sold in Texas between 2000 and 2004.

With the Declaration of Lennart Breslin, Moffett presents controverting evidence regarding the relationship of Moffett with various entities.  Breslin, the President of Hiab, Inc., located in Ohio, explains that Hiab, Inc., is a Delaware corporation and the exclusive dealer of truck mounted forklifts manufactured by Moffett Engineering, Ltd.  Hiab, Inc., is a wholly owned subsidiary of Cargotec Holdings, Inc., a Nevada corporation, which is a wholly owned subsidiary of Hiab Oyj, a Finnish corporation which is a subsidiary of Cargotec Oyj, also a Finnish corporation.  Cargotec Oyj owns Moffett Engineering Limited, Waltco, and Hiab.  Cargotec Oyj operates through three business units, one of which is referred to as "Hiab."  Hiab is the business unit for all on-road load handling equipment manufactured and sold by the companies under the Cargotec Oyj umbrella, even if those companies are not direct subsidiaries of Hiab.  Breslin explains that there is no relationship between Moffett and Waltco, other than being grouped in the Hiab business unit.  *See* Declaration of Lennart

Breslin, Attached to Sur-Rebuttal Brief. Thus, Moffett argues, Waltco's presence in Texas can not establish minimum contacts with Texas on behalf of Moffett.

The evidence submitted by J.B. Hunt shows that in the fall of 2003, Hiab/Cargotec organized a customer goodwill tour of the Moffett plant in Ireland that included Texas customers. *See* Exhibit 9 to J.B. Hunt's First Supplemental Response. Moffett's Engineering Director later visited some of those same Moffett customers in Texas. *See* Exhibit 11 to J.B. Hunt's First Supplemental Response.

Moffett and Hiab, Inc., have a Sales Agreement in which Moffett granted Hiab, Inc., "the right to act as a representative" of Moffett in the United States. *See* Exhibit 10 to J.B. Hunt's First Supplemental Response. Hiab, Inc., maintains two branch offices in Texas. Its representatives in those two branch offices "engage in frequent communication with customers and potential customers." Exhibit 7 to J.B. Hunt's First Supplemental Response. Pursuant to the Sales Agreement, Hiab, Inc.'s, right to appoint dealers and agents in the United States "shall be subject to the approval of" Moffett." *See* Exhibit 10 to J.B. Hunt's First Supplemental Response. Additionally, the distribution Agreement requires the distributor to provide regular information to Moffett regarding estimates and proposed sales, sales to dealers, review of prices and conditions for the products and for products of competitors. *See* Exhibit 2 to J.B. Hunt's Second Supplemental Response.

Harry Karr, an employee of Hiab, Inc. (the area manager for Fort Worth and Dallas) testified that he is a Texas-based salesperson who was invited to Ireland by Moffett to look at Moffett products to help him sell those products in Texas. He also testified that he traveled to Ireland various times before 2004 on Moffett business and that all his customers are in Texas. *See* Exhibit 1 to J.B. Hunt's Second Supplemental Response.

**C.     Has J.B. Hunt Established that Moffett Has Minimum Contacts with Texas?**

**1.     <u>Does the Court Have General Jurisdiction Over Moffett?</u>**

When a nonresident defendant has "continuous and systematic general business contacts" with the forum state, a court has general jurisdiction over any suit brought against the defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).  A defendant's contacts with the forum state may be deemed continuous, systematic, and substantial if the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, (1985).  Such contacts need not exhibit a physical presence within the state, but they should be "such that [the defendant] should reasonably anticipate being haled into court there." *Id.* at 474-76 (citing *World-Wide Volkswagen Corp. v. Woodson*, 44 U.S. 286, 297 (1980)).

J.B. Hunt has not alleged the sort of facts that typically underlie general jurisdiction, such as property ownership, payment of taxes, frequent travel, regular conduct of business, or maintenance of bank accounts in Texas. *See generally Middlebrook v. Anderson*, 2005 WL 350578, *3 n. 4 (N.D. Tex. Feb.11, 2005).  Additionally, the Declaration of Keith Quigley states that Moffett is not registered to do business in Texas; has no officers, directors, or employees living in Texas; has never maintained an office, mailing address, or telephone listing in Texas; has never owned or leased property in Texas; has no assets in Texas; has never had any bank account in Texas; has never paid taxes in Texas; does not sell its products in Texas; and does not have a registered agent in Texas.  *See* Exhibit A to Moffett's Motion to Dismiss.

J.B. Hunt's argument for general jurisdiction relies instead on the assertion that Hiab, Inc., acts as Moffett's agent in Texas, and as such Hiab's contacts with Texas may be imputed to Moffett.

Mofett responds that it sells its products solely to Hiab, Inc., in Ohio, and Hiab, Inc., has its own sales and service agents throughout the United States, including Texas. Moffett asserts that it has no contacts of its own with Texas. Courts have long presumed the institutional independence of related corporations, such as parent and subsidiary, when determining if one corporation's contacts with a forum can be the basis of a related corporation's contacts. *See Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 345 (1925). This presumption of corporate separateness, however, may be overcome by clear evidence to the contrary. *Donatelli v. National Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990) (if parent corporation has utilized the subsidiary in such a way that an agency relationship between the companies is established, personal jurisdiction over the parent can be based on the contacts of the subsidiary). There must be evidence of one corporation asserting sufficient control to make the other its agent or alter ego. *Id.*, 893 F.2d at 465-66. Moreover, the burden of making a prima facie showing of such symbiotic corporate relatedness is on the proponent of the agency/alter ego theory. *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 492-93 (5th Cir. 1974), overruled on other grounds, *Insurance Corporation of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-03 (1982). In this case, J.B. Hunt has failed to present any evidence whatsoever as to the degree of control that Moffett asserts over Hiab, Inc., or evidence controverting the evidence of the separateness of the entities presented by Moffett. Additionally, with regard to the exclusive dealer relationship with Hiab, in *Bearry v. Beech Aircraft Corp*., 818 F.2d 370, 375 (5th Cir.1987), the Fifth Circuit explicitly held that distributors selling manufactured products for their own account do not create minimum contacts sufficient to warrant general jurisdiction over the manufacturer.

The evidence before the Court at this time is insufficient to make the agency leap J.B. Hunt advocates, and the Court declines to do so. In this case, the Court finds that Moffett's contacts with

Texas do not qualify as "systematic, and continuous." Accordingly, this Court finds that it does not have general jurisdiction over Moffett.

### 2.  Does the Court Have Specific Jurisdiction Over Moffett?

As noted, a court may exercise *specific* personal jurisdiction over a defendant when: (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendants contacts with the forum state. *Helicopteros Nacionales de Colombia*, 466 U.S. at 414 n. 8; *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). Courts are required to examine the relationship between the defendants, the forum state, and the litigation to determine "whether the defendant[s] purposefully established 'minimum contacts' in the forum state" so that it was foreseeable "that the defendant[']s] conduct and connection with the forum state are such that [they] should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen*, 444 U.S. at 297).

Moffett contends that it has not had any purposeful contacts with the state of Texas. A defendant's limited contact with the forum state may support specific jurisdiction if such contacts give rise to the cause of action. *See Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993) ("A single act by the defendant directed at the forum state, therefore, can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."). When the contact stems from a product, sold or manufactured by the foreign defendant, which has caused harm in the forum state, the court has jurisdiction if it finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state. *World-Wide Volkswagen*, 444 U.S. at 298.

The Supreme Court has stated that a defendant's placing of its product into the stream of commerce with the knowledge that the product will be used in the forum state is enough to constitute minimum contacts. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980). The Fifth Circuit is among the circuits that have interpreted *World-Wide Volkswagen* to hold that "mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 111 (1987) (citing *Bean Dredging Corp. v. Dredge Technology Corp.*, 744 F.2d 1081 (5th Cir. 1984)); *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993).

It is undisputed that the forklift involved in the accident that killed Roger Harris in Texas was manufactured by Moffett. Thus in order to establish minimum contacts with Texas, the Court must determine whether Moffett placed its product into the stream of commerce foreseeing that it could arrive in Texas. The evidence clearly demonstrated that it did. Moffett was aware that its products are sold in Texas and the product's presence in Texas was plainly foreseeable. Moffett's Engineering Director traveled from Ireland to Texas to meet with Moffett customers in Texas in 2005. Additionally, Moffett's marketing on its website acknowledges that it serves customers "worldwide." The evidence also shows that in the fall of 2003, Hiab/Cargotec organized a customer goodwill tour of the Moffett plant in Ireland. That tour included customers from Texas that Moffett representatives later visited in Texas, regarding Moffett products some of those customers had purchased.

*Bean Dredging Corp. v. Dredge Technology Corp.*, 744 F.2d 1081 (5th Cir. 1984), and *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415 (5th Cir.1993) are instructive to this case. In *Bean Dredging*, a Washington corporation made steel castings which were used in the manufacture

11

of hydraulic cylinders by a California company. 744 F.2d at 1082. The cylinders were then incorporated into a dredge constructed by a Louisiana corporation. *Id.* When the dredge failed in Louisiana due to allegedly defective castings, suit was brought there and third-party claims were filed against the Washington manufacturer. *Id.* The district court determined that the Washington castings manufacturer: (1) had no knowledge of the end-product into which the castings would be incorporated; (2) had never sold directly to a Louisiana company; (3) did not know any castings went to Louisiana; (4) did not negotiate with representatives from Louisiana; (5) did not solicit business in Louisiana; and (6) did not own property in the state. *Id.* Nevertheless, the court cited deposition testimony of the manufacturer's president which "evinced an awareness that . . . his company's commercial products, once they entered the stream of commerce, might go virtually anywhere." *Id.* Ultimately, the court found minimum contacts, reasoning that although the Washington manufacturer "did not originate the distribution system and [does] not control it, [the company] did place the [steel castings] in and move them along the stream of commerce destined for retail sale [in finished products] throughout the United States." *Id.* at 1085. The Court additionally based its findings upon the facts that the Washington manufacturer in no way tried to limit the markets in which its products were sold.

In *Ruston Gas Turbines*, a Texas corporation sued an engine manufacturer for breach of contract, breach of warranty, and products liability. 9 F.3d at 417. The engine manufacturer filed a third-party complaint against a Minnesota corporation that had manufactured certain component parts of the engines. *Id.* Relying upon the "stream-of-commerce-plus" theory advocated by the plurality in *Asahi Metal Industries Co. v. Superior Court*, 480 U.S. 102 (1987), the district court dismissed the third-party claim, finding that the Minnesota component manufacturer did not have minimum contacts with Texas. *Id.* at 420. The Fifth Circuit held that the district court's reliance upon the

stream-of-commerce-plus theory was erroneous in that, because *Asahi* did not "provide clear guidance on the 'minimum contacts' prong," the circuit had continued to follow the stream-of-commerce analysis in *World-Wide Volkswagen v. Woodson*, 444 U.S. 286 (1980). *Id.* Under the *World-Wide Volkswagen* analysis, the court found that the component manufacturer's contacts with Texas were sufficient to justify the exercise of personal jurisdiction. *Id.* The court reasoned that the component manufacturer 'not only could have foreseen that the products might end up in Texas, it knew as a fact that the products were going to be delivered to a specific user in Houston, Texas." *Id.* The court also took note of the fact that, through its relationship with the engine manufacturer, the component manufacturer made 211 shipments of its components to Texas over a 15-year span and that its employees visited Texas to meet with the engine manufacturer's customers. *Id.* at 420-21. Thus, the component manufacturer should have reasonably anticipated that it could be haled into court in Texas. *Id.*

Like in *Bean Dredging* and *Ruston Gas Turbines*, there is evidence that Moffett was aware that its products, once they entered the stream of commerce, would end up in Texas. Like *Bean Dredging*, Moffett has made various statements about its worldwide presence evincing an awareness that its products could end up anywhere, including Texas, and it in no way tried to limit entry of its products to Texas. Quite the contrary, Moffett took affirmative steps to encourage sales in Texas. Moffett representatives visited Moffett customers in Texas, and Texas customers and Moffett representatives located in Texas were Moffett's guests at its plant in Ireland. The evidence shows that 335 Moffett forklifts were sold in Texas between 2000 and 2004. And importantly, pursuant to Moffett's Sales Agreement with Hiab, Inc., Hiab, Inc.'s right to appoint dealers and agents in the United States was "subject to the approval of" Moffett. *See* Exhibit 10 to J.B. Hunt's First Supplemental Response.

Hiab Inc., maintains two branch offices in Texas. Exhibit 7 to J.B. Hunt's First Supplemental Response. Thus as in *Ruston Gas Turbines*, Moffett was aware that its products were being sold in Texas. *See also Oswalt v. Scripto, Inc.*, 616 F.2d 191, 197-98, 200-01 (5th Cir.1980) (holding a manufacturer subject to personal jurisdiction in Texas even though it used a distributor to import its product into the United States and conducted no business in the United States other than contracting with that distributor, because the manufacturer had knowledge or an expectation that the product would reach Texas in the course of the distribution chain.).

The evidence is more than sufficient to establish that Moffett has minimum contacts with Texas as Moffett purposely availed itself of the privileges of doing business in Texas such that Moffett should reasonably anticipate being haled into court in Texas. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993). The evidence supports that Mofett knew its products were being sold in Texas.

### 3. **Would Subjecting Moffett to Suit in Texas Offend Traditional Notions of Fair Play?**

The Court further finds that Plaintiff has not demonstrated that the assertion of personal jurisdiction over Moffett in a Texas court would comport not with "fair play and substantial justice"– that is the second prong of the test. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Where, as here, minimum contacts are established, a nonresident defendant must make a "compelling case" against the exercise of personal jurisdiction. *Id.* When determining the fundamental fairness issue the Court normally examines: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering substantive social policies. *Gundle Lining Const. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201 (5th Cir.

1996). The assertion of jurisdiction will only rarely be found to be unfair once minimum contacts are established. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) at 215. The Court will address these factors in turn.

First, the Court finds that as a world-wide corporation, Moffett's burden in defending it self would not be great. Second, Texas' interest in addressing harm to its citizens caused by products manufactured in foreign forums is great. Third, Plaintiffs' interest in convenient and effective relief will be served by including the manufacturer of the defective product in the suit. Given the large number of defendants in this suit, the most efficient resolution of Plaintiffs' claims would be in Texas, where most defendants will be subject to jurisdiction. *See ICEE Distribs., Inc. v. J & J Snack Foods Corp.*, 325 F.3d 586, 594 (5th Cir. 2003) ( "[A]s a matter of judicial economy, the best place for resolution of the issues presented is in this suit, where claims against the three allegedly offending parties . . . can be resolved together . . . ."). Fourth, the Judicial system's interest in efficient resolution of the controversy requires that Moffett, the manufacturer, of the allegedly deficient product be included in the suit. *Id.* Lastly, the shared interest of the states is neither served or disserved by this Court exerting jurisdiction over Moffett, an Irish corporation. Accordingly, the Court finds that this Court's assertion of personal jurisdiction over Moffett would comport with fair play and substantial justice.

### III.  RECOMMENDATION

The Court **RECOMMENDS** that the District Court **DENY** Motion to Dismiss of Moffett Engineering, Ltd. (Clerk's Doc. No. 46)**.**

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(C);  *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S.Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 3rd day of August, 2007.

                                                    _____
                                                  ANDREW W. AUSTIN
                                                  UNITED STATES MAGISTRATE JUDGE